IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BEVERLY NEWTON, | : | |
| | : | |
| Movant/Defendant, | : | |
| | : | Civ. Act. No. 15-67-LPS |
| v. | : | Cr. Act. No. 13-094-LPS |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent/Plaintiff. | : | |

Beverly Newton. *Pro se* Movant.

Lesley F. Wolf, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

**MEMORANDUM OPINION**

March 23, 2018
Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Beverly Newton ("Movant") filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (D.I. 74) The United States filed an Answer in Opposition, to which Movant filed a Reply. (D.I. 82; D.I. 85) For the reasons discussed, the Court will deny Movant's § 2255 Motion without holding an evidentiary hearing.

## II. BACKGROUND

On September 19, 2013, Movant pled guilty to false claims conspiracy, mail fraud, and social security fraud. (D.I. 48; D.I. 75) The charges stemmed from Movant's participation in a conspiracy to file false federal income tax returns with the Internal Revenue Service ("IRS"), using other people's identities, from January 2011 through April 2013. (D.I. 82 at 1)

A pre-sentence investigation report ("PSR") was drafted prior to Movant's sentencing hearing. Movant provided a number of corrections to the PSR, which were incorporated into the final version. The final version of the PSR described the offense conduct as follows:

> Beginning in or around January 18, 2011, [Movant] engaged in an identity theft and tax fraud conspiracy. [Movant] and her co-conspirators obtained the names and social security numbers of more than 100 people in Delaware and elsewhere. Over the course of two years, these identities were used to file at least 180 false Federal Income Tax Returns with the Internal Revenue Service (IRS). The returns were false in that [Movant's] co-conspirators had fabricated the wage and withholding information on the tax returns, among other things, enabling them to seek more than $1.8 million in refunds.

PSR at ¶ 18.

As calculated in the PSR, Movant's Total Offense Level was 26, and her Criminal History Category was I, leading to a Guideline Range of between 63 and 78 months imprisonment. *See* PSR at ¶¶ 37, 52, 82. This calculation was based, in part, on a four-level enhancement for the number of

1

victims (50 or more) under U.S.S.G. § 2B1.1(b)(2)(b), and a two-level enhancement for the unlawful transfer of a means of identification (unlawfully obtained SSNs) to obtain another means of identification (tax returns), under U.S.S.G. § 2B1.1(b)(11)(c)(i). *See* PSR at ¶¶ 39, 40. Movant did not raise any legal objections to the PSR. However, she filed a Sentencing Memorandum asking the Court for a downward departure on the basis of attempted cooperation, acceptance of responsibility, and because the loss substantially overstated the seriousness of the offense. (D.I. 61; D.I. 63) The government opposed Movant's request for a downward departure and asked for a sentence of 72 months. (D.I. 62 at 9)

During the sentencing hearing, the Court adopted the PSR's calculation of the Guideline Range and sentenced Movant to a 63 month sentence. (D.I. 76) The Court considered the arguments and the relevant factors set out in 18 U.S.C. § 3553(a) and denied Movant's motion for downward departure after making an individualized assessment based on the facts presented. The Court then highlighted several factors supporting the imposition of a lengthy sentence. For instance, the Court explained that Movant "was engaged in "a long and large criminal conspiracy," involving at least $1.8 million in intended loss, and noting that "[i]t was the intent of this conspiracy to go on through two or even three tax seasons, to involve the filing of close to 200 false federal returns, to steal the identities of numerous individuals with all the attendant harm to those individuals." (D.I. 76 at 26) The Court further explained,

> [i]t was not a fleeting bad moment decision, nor was it an unsophisticated scheme that [Movant] was engaged in. Specifically, the scheme ran from January of 2011 until [Movant's] arrest in April of 2013. It was a conspiracy to obtain the name and Social Security numbers and file false federal and ultimately state tax returns, eventually using the identification information of more than 100 people. And, as I say, it culminated in the filing of at least 180 federal false tax returns seeking in excess of $1.8 million of refunds.

2

*     *     *

> [Movant] knew that the tax returns were false. That is set out in [the] presentence report at paragraph 19 without objection. And she stipulated in a plea agreement that the conspiracy was responsible for more than $1 million of loss. The actual loss to the United States Government was $872,000, and [Movant] personally received more than $300,000 from her participation in this criminal scheme.

(D.I. 76 at 26-27) The Court sentenced Movant to 63 months of imprisonment, three years of supervision, a $100 special assessment, and $872,443 restitution. (D.I. 64)

## III. DISCUSSION

By her Motion, Movant asserts that defense counsel provided ineffective assistance by: (1) failing to object to the application of a four-level enhancement for the number of victims (fifty or more) under U.S.S.G. § 2B1.1(b)(2)(b); and (2) failing to object to the application of a two-level identity theft enhancement, under U.S.S.G. § 2B1.1(b)(11)(c)(i). As a general rule, ineffective assistance of counsel allegations are properly presented in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). However, Paragraph 15 of Movant's Plea Agreement contains a waiver of Movant's right to file a direct appeal and/or a collateral attack on her conviction and sentence, except in the following circumstances:

> (1) the government appeals from the sentence; (2) [her] sentence exceeds the statutory maximum for the offense set forth in the United States Code; or (3) the sentence unreasonably exceeds the Sentencing Guidelines range determined by the District Court in applying the United States Sentencing Guidelines.

(D.I. 48 at ¶ 15)

The government does not address the appellate/collateral attack waiver in its Answer, but contends that Movant's ineffective assistance of counsel claims should be denied as meritless. The Court construes the government's silence as an implicit concession that the ineffective assistance of

3

counsel claims should not be included in the waiver, and concurs with its concession. The Third Circuit has recognized that a miscarriage of justice may result by enforcing an appellate/collateral waiver where there has been ineffective assistance of counsel in connection with the negotiation of the waiver. *See United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007). Additionally, in October 2014, the Department of Justice ("DOJ") issued a memorandum stating that the DOJ will no longer ask criminal defendants who plead guilty to waive their right to bring future claims of ineffective assistance of counsel. *See* http://www.justice.gov/opa/pr/attorney-general-holder-announces-new-policy-enhance-justice-departments-commitment-suppoet (last visited January 30, 2015). The memorandum also provides that, for "cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve." *Id*. Given these circumstances, the Court will address the merits of Claims One and Two.

Ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, Movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id*. at 688. In evaluating an attorney's conduct, a court must avoid "the distorting effects of hindsight" and must "evaluate the conduct from counsel's perspective at the time." *Id*. at 687. Under the second *Strickland* prong, Movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id*. at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). Both *Strickland* prongs must be satisfied in order for

4

Movant to successfully show that defense counsel rendered constitutionally ineffective assistance, and the Court can choose which prong to address first. *See Strickland*, 466 U.S. at 668.

Finally, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689. Nevertheless, "[w]here defense counsel fails to object to an ***improper*** enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance." *Jansen v. United States*, 369 F.3d 237, 244 (3d Cir. 2003) (emphasis added).

### A. Claim One: Number of Victims Enhancement

In Claim One, Movant contends that defense counsel provided ineffective assistance by failing to object to the application of the four-level enhancement for 50 or more victims. According to Movant, the Court should have determined if the 50 or more victims enhancement was applicable to her case under the "clear and convincing evidence" standard, rather than the "preponderance of the evidence" standard. She asserts that there is "no way of knowing whether the alleged 200 individuals referred to by the government as 'victims' suffered pecuniary harm or how they may otherwise satisfy the definition of victim." (D.I. 85 at 6) Movant alleges the enhancement was improperly applied because only individuals who have suffered actual financial losses may be considered victims, and the Court applied the enhancement for victims that did not suffer any actual financial loss. For the following reasons, the Court rejects Movant's contention.

Pursuant to U.S.S.G. § 2B1.1(b)(2)(B), a four-level enhancement is to be applied if the offense involved 50 or more victims. A victim under § 2B1.1 is "any person who sustained . . . actual loss," and "actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." *United States v. Smith*, 751 F.3d 107, 118 (3d Cir. 2014) (quoting U.S.S.G. § 2B1.1 cmt. n. 1, 3(A)(i)). Pecuniary harm is monetary harm or harm that is otherwise measurable in

5

money, including "the expenditure of time and money to regain misappropriated funds and replace compromised bank accounts." *Id.* at 119.

In cases involving means of identification, like social security numbers, a "victim" also includes "any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1, cmt. n. 1; *see also United States v. Kismat*, 570 F. App'x 155, 160 (3d Cir. 2014). "[A]ny individual whose identity is stolen should be considered a victim for purposes of the enhancement, 'even if fully reimbursed,'" because a target of identity theft "must often spend significant time resolving credit problems and related issues, and such lost time may not be adequately accounted for in the loss calculations under the guidelines." *Smith*, 751 F.3d at 118. As explained by the Third Circuit,

> [t]his interpretation of "actual loss" and "victim" comports with both the Guidelines and the conclusions of coordinate appellate courts, not to mention the commonsense proposition that an account holder who must spend time and resources to dispute fraudulent activity, recoup stolen funds, and repair his or her credit and financial security has suffered a monetizable loss that is a reasonably foreseeable and direct consequence of the defendant's theft or fraud.

*Id.* at 120. Moreover, under U.S.S.G. § 1B1.3(a)(ii), specific offense characteristics (including the four-level enhancement for 50 or more victims under § 2B1.1(b)(2)) are to be determined on the basis of "(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of jointly undertaken criminal activity (undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were" reasonably foreseeable in connection with and in furtherance of the jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1)(B).

After reviewing Claim One within the foregoing framework, the Court concludes that Movant has failed to satisfy the prejudice prong of the *Strickland* standard. Movant's arguments are

flawed. First, the government must prove the facts in support of a sentence enhancement by a preponderance of evidence, and not, as asserted by Movant, by clear and convincing evidence. *See United States v. Evans*, 155 F.3d 245, 253 (3d Cir. 1998). Second, Movant does not challenge the legality of her plea agreement, and the conduct she admitted to when pleading guilty contradicts her instant challenge regarding the number of victims. During the plea colloquy, Movant admitted that she and her co-defendants obtained the names and social security numbers of more than 100 other people in Delaware and elsewhere and used those numbers to "file at least 180 false Federal Income Tax Returns with the Internal Revenue Service." (D.I. 75 at 22) Those false returns sought more than $1.8 million in refunds, and the IRS released at least $872,443 as a result of the false returns. Although Movant did not physically file the fraudulent tax returns, she obtained more than $300,000 of the refunds, sent follow-up letters to the IRS, and took other steps that show that the filing of the tax returns was the desired goal of the conspiracy. (D.I. 75 at 22-28)

Movant's admitted facts demonstrate that it was reasonably foreseeable that Movant's co-defendants would file the tax returns with the stolen identities. In addition, the PSR recounted the same aforementioned facts, and listed the number of victims as 200. *See* PSR at ¶ 27. Given these circumstances, the Court concludes that Movant has failed to demonstrate a reasonable probability that she would have received a different sentence but for defense counsel's failure to object to the four-level enhancement for 50 or more victims. Accordingly, Movant's first ineffective assistance of counsel claim does not warrant relief.

### B. Claim Two: Identity Theft Enhancement

The identity theft and so-called "breeder" enhancement set forth in U.S.S.G § 2B1.1(b)(11)(C)(i) provides for a two-level increase if the offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of

identification." Pursuant to Application Note 1 of U.S.S.G. § 2B1.1, the term "means of identification" has the meaning given to that term in 18 U.S.C. § 1028(d)(7), which includes any name, social security number, date of birth, employer or taxpayer identification number, unique electronic identification number, address, or routing code, and telecommunication identifying information or access devices (as defined in 18 U.S.C. § 1029(e)). *See* U.S.S.G. 2B1.1, cmt. n.1 (2013). Section 1029(e) defines an "access device" as

> [a]ny card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated soled by paper instrument).

18 U.S.C. § 1029(e).

The Application Notes provide illustrative examples of circumstances in which the identity-theft enhancement might apply. For instance, if a defendant obtains a credit card or bank loan using a stolen identity, the resulting credit card and loan account number qualify as the new "means of identification. *See* U.S.S.G. § 2B1.1, cmt 10(c)(ii) (2013). However, if a defendant simply uses a stolen credit card, or forges another person's signature to cash a check, no second means of identification has been created. *Id.* The Background to § 2B1.1(b)(11)(c) provides the following information with respect to an aggravated form of identity theft known as "affirmative identity theft" or "breeding,"

> in which a defendant uses another individual's name, social security number, or some other form of identification (the "means of identification") to "breed" (i.e., produce or obtain new or additional forms of identification). Because 18 U.S.C. § 1028(d) broadly defines "means of identification", the new or additional forms of identification ***can include*** items such as a driver's license, a credit card, or a bank

8

> loan. . . . Generally, the victim does not become aware of the offense
> until certain harms have already occurred (e.g., a damaged credit rating
> or an inability to obtain a loan). The minimum offense level also
> accounts for the non-monetary harm associated with these types of
> offenses, much of which may be difficult or impossible to quantify
> (e.g., harm to the individual's reputation or credit rating,
> inconvenience, and other difficulties resulting from the offense).

U.S.S.G. § 2B1.1(b)(11)(C) cmt. background (2013) (emphasis added).

In Claim Two, Movant contends that defense counsel provided ineffective assistance by failing to object to the two-level identity-theft enhancement on the basis that tax returns do not qualify as a "means of identification" under U.S.S.G. § 2B1.1(b)(11)(C)(i). To support her argument, Movant refers to the fact that the Court sustained her co-defendant Patterson's objection to the application of the two-level enhancement after determining that the enhancement provision was ambiguous. (D.I. 85 at 12) The following synopsis of the relevant portion of Patterson's sentencing hearing provides background information for the Court's review of Claim Two.

The Sentencing Memorandum Patterson filed prior to her sentencing hearing cited *United States v. Hawes*, 253 F.3d 245, 251 (3d Cir. 2008), and objected to the application of the two-level identity theft enhancement on the basis that the social security numbers were not used to generate the type of additional identifying information or "breeding" that is targeted by the enhancement. (*See* Crim. Act. No. 13-101-LPS-2 D.I. 66) During her sentencing hearing, Patterson argued that the identity-theft enhancement should not apply to her case, because a tax return is not a typical form of identification, such as a driver's license or birth certificate. Patterson noted that, although the social security numbers were used to obtain the fraudulent tax returns, the tax forms had the same social security numbers. (*See id.* D.I. 93 at 10) In response, the government acknowledged that the Third Circuit has found the identity-theft enhancement to be ambiguous in non-tax cases. (*See id.* D.I. 81 at 6-7; D.I. 93 at 14) The government also acknowledged that a plain reading of the enhancement

9

and statute suggests that a tax return may not constitute a means of identification, because it is not a "name or number" and it does not appear to fall within the definition of an "access device." (*See id.* D.I. 81 at 6-7) However, after noting that the Second and Eleventh Circuits have expressed a willingness to deem tax returns a "means of identification" if they are used for identification purposes,[1] the government argued that the Court should apply the enhancement even if it was ambiguous. (*See id.* D.I. 81 at 8; D.I. 93 at 15) The government contended that the creation of the tax returns was essential to the execution of the scheme, and the harm to the identity theft victims was precisely the type of harm the enhancement was aimed at addressing, namely, damaged credit rating, inability to obtain a loan, and inconvenience. (*See id.* D.I. 81 at 8; D.I. 93 at 14)

The Court sustained Patterson's objection, explaining that, "to the extent there is ambiguity [with respect to this issue], that ambiguity should redound to the defendant with the facts of this case." (*See id.* D.I. 93 at 19) As a result, the Court concluded that Patterson's sentencing Guideline Range should be reduced from 63 to 78 months to 51 to 63 months, with a corresponding offense level of 24. (*See id.* D.I. 93 at 20)

The Court now turns to Movant's Claim Two. Citing *Hawes* and *White*, Movant contends that defense counsel was ineffective for failing to argue that the identity theft enhancement was inapplicable because she did not engage in "breeding." In *Hawes*, a financial advisor defrauded his clients by changing their addresses so that he could obtain mailings of their financial statements and mail them false financial statements instead. *See* 523 F.3d at 247. After noting the ambiguity of the

---

[1] *See United States v. Lyle*, 239 F. App'x 529, 522-23 (11th Cir. 2007) (enhancement upheld where tax returns containing stolen identity information were used to obtain refund anticipation loans); *United States v. White*, 571 F. App'x 20, 25-26 (2d Cir. 2014) (indicating that tax return may constitute means of identification, reversing and remanding sentence for finding of whether defendant used fraudulent tax returns to produce or obtain another means of identification).

10

identity-theft enhancement and the "paucity of helpful case law" on the issue of its application, the Third Circuit turned to the application notes for guidance and held that the case did not qualify for the enhancement because a mailing address, on its own, is not a "means of identification" as defined by the Guidelines. *Id.* at 250-51. The Third Circuit reached this holding after concluding § 2B1.1(b)((9)(C)(i) targets "breeding a new means of identification" involving "unique means of identification, primarily numbers" rather than "merely an attribute of one's identity." *Id.* at 251-52. The *Hawes* Court focused on the fact that changing an address is "not easily analogous to the examples in the application notes," noted that an "address or piece of mail does not seem to fit the Guideline's definition of 'means of identification,'" and concluded that the "change of address was to thwart the discovery of, not enable, the illicit activity." *Id.* at 251-52.

In *White*, the defendant was convicted of illegally filing electronic tax returns and the district court applied the identity-theft enhancement when calculating White's sentence. *See White*, 571 F. App'x at 26. On appeal, the Second Circuit remanded the case for resentencing after concluding that the sentencing court had not made a finding, and the PSR did not state, that White had obtained another means of identification by using others' identifications to file false tax returns and to receive refunds. *Id.*

After considering the foregoing caselaw, the Court rejects Movant's argument. To begin, in the Third Circuit, "ineffective assistance [of counsel] cannot be established by failure to argue a point supported only by authority outside this jurisdiction." *United States v. Jiminez*, 54 F. App'x 369, 371 (3d Cir. 2002). Additionally, the Second Circuit issued the *White* decision on June 26, 2014, approximately five months after Movant's sentencing hearing took place on January 14, 2014. An attorney is not deficient for failing to cite and argue cases decided after sentencing. *See United States v. Otero*, 502 F.3d 331, 336 (3d Cir. 2007). Nor is an attorney *per se* deficient for failing to argue an

11

objection to an enhancement that is later recognized and argued convincingly by another defense attorney. *See United States v. Manigault*, 395 F. App'x 831, 833-34 (3d Cir. 2010). In other words, counsel's failure to anticipate the *White* decision -- and failure to anticipate Patterson's success in pressing the objection before this Court -- do not amount to ineffective assistance.

Moreover, although the Third Circuit had decided *Hawes* prior to Movant's sentencing, Movant's case is distinguishable from *Hawes* in two respects. First, the victims' social security numbers were added to the tax returns containing the victims' names, and unlike an address, the enhancement specifically identifies numbers and names as means of identification. Second, the addition of the victims' social security numbers to the tax returns did not just hinder discovery of the criminal scheme but, rather, enabled the illicit activity. Thus, despite the *Hawes* and *White* decisions, the Court cannot conclude that defense counsel's failure to object to the identity-theft enhancement was the result of a less than reasonable investigation of the law and facts.

Additionally, as noted by the *Hawes* Court, the identity theft enhancement was ambiguous, and ambiguity leads to alternate constructions. Although the Third Circuit and other circuits had not specifically addressed the issue of whether a tax return constitutes a "means of identification" for purposes of the identity-theft enhancement when Movant was sentenced in January 2014,[2] some courts had upheld the application of the identity-theft enhancement in circumstances similar to Movant's, namely, where the original means of identification was duplicated onto another medium but not used to obtain a different or new means of identification. *See United States v. Sash*, 396 F.3d 515, 524 (2d Cir. 2005) (enhancement applied when defendant duplicated police badges); *United States v. Newsome*, 439 F.3d 181, 185 (3d Cir. 2006) (enhancement applied when defendant altered

---

[2]In fact, this issue is still an open legal question in this Circuit.

drivers licenses). For instance, in *Sash*, the Second Circuit held that the district court properly applied the identity theft enhancement under the plain language of the enhancement when the defendant took the original means of identification (police badges) and duplicated them into false police badges. *See Sash*, 396 F.3d at 524. The *Sash* Court also noted that "nothing in the [background] commentary requires that identity theft or 'breeding' be found in order to apply the [e]nhancement." *Id.* In *Newsome*, the Third Circuit explained that,

> [b]y taking a means of identification – the information from the fraud victim's driver license and employer ID – and combining that information with a photograph of Daniels or Rivera, Newsome produced another means of identification – a means of identification of the victim which, because it bore Daniels' or Rivera's photograph, would give Daniels or Rivera access to the victim's assets. This is precisely the type of behavior for which the sentencing enhancement was intended.

439 F.3d at 187. The *Newsome* Court reasoned that the phrase "any other means of identification" does not mean "different," but rather, it means "additional," as demonstrated by the Commentary's definition of "produce" to include "manufacture, design, alter, authenticate, duplicate, or assemble." *Id.* at 185. Significantly, as explained in *Newsome*,

> [a]lteration, duplication, and assembly are precisely what Newsome did when he took an existing means of identification, duplicated it, and assembled it together with a photograph of another person to create an altered 'hybrid' means of identification. We note that "means of identification" are defined as "any name or number that may be used, alone ***or in conjunction with any other information***, to identify a specific individual.

*Id.* Thus, under *Sash* and *Newsome*, defense counsel could reasonably have concluded that the facts of Movant's case were sufficiently encompassed by the identity-theft enhancement guideline provision such that it would apply, and that an objection would therefore be unsuccessful.

While not controlling, the Court finds further support for its conclusion that defense counsel could have reasonably concluded that the identity-theft enhancement applied to Movant's case in decisions from other circuits issued after Movant's sentencing. For instance, in *United States v. Norwood*, 774 F.3d 476, 481 (8th Cir. 2014), the defendant obtained the names and personal information of homeless men and then reprinted the names of the men on counterfeit checks. The Eight Circuit opined that "duplicating a means of identification onto another medium satisfies the sentencing enhancement where that duplication enables an altered or hybrid means of identification or false identification." *Id.* In *United States v. Johnson*, 658 F. App'x 244, 247 (6th Cir. 2016), the Sixth Circuit held that the identity-theft enhancement is properly applied in the electronic filing of fraudulent tax return scenario because the electronic filing of a false return causes the creation of a unique document locator number for each tax return, and the document locator number constitutes a "means of identification." *See United States v. Johnson*, 658 F. App'x 244, 247 (6th Cir. 2016); *see also United States v. Thornton*, 2018 WL 266787, at *3 (6th Cir. Jan. 3, 2018).

Finally, contrary to Movant's contention, the fact that Patterson successfully objected to the application of the enhancement seven months after Movant's sentencing hearing does not demonstrate that defense counsel performed deficiently by not challenging the identity-theft enhancement at Movant's sentencing. The Court's decision that the identity-theft enhancement was inapplicable to Patterson's case was based on the enhancement's ambiguity and the fact that Patterson and Movant were differently situated. For example, the Court specifically identified Patterson's redeemability and her lesser fraud arrests that did not lead to significant convictions when explaining why Patterson should receive a lesser sentence than Movant. (D.I. 93 at 47-48) In contrast, during Movant's sentencing, the Court voiced its substantial concern about Movant's prior experience with the criminal justice system and her contact with investigators between the 2012 and

2013 tax years. (D.I 76 at 27-28) The Court specifically noted Movant's "experience doing something similar 20 or so years ago, serving time in prison for that, and then doing it all over again and continuing, as I say, to do it after you knew you were under investigation here." (D.I. 76 at 35) The Court also explained that its sentence to the bottom of the guideline range (63 months) should be viewed as a consideration of Movant's request for leniency. (D.I. 76 at 30-31)

Thus, the Court agrees with the government that "counsel was not deficient for failing to object to the identity theft enhancement because the objection was not plain or obvious, and the caselaw was not well settled at that time. The defendant has not overcome the presumption that counsel's representation was within the wide range of reasonable professional assistance." (D.I. 82 at 7; *see also Marshall v. Hendricks*, 307 F.3d 86 (3d Cir. 2002) (stating that existence of alternative, even more effective, strategies does not render counsel's performance deficient)) Moreover, viewing counsel's performance in its totality, it would be wrong to deem it ineffective, where the Court was persuaded, under the totality of pertinent factors, to impose a sentence it described as "lenient."

For the aforementioned reasons, and especially given the unsettled nature of the law concerning the identity theft enhancement at the time of Movant's sentencing, the Court cannot conclude that defense counsel's failure to object to the identity-theft enhancement constituted deficient performance. *See, e.g., New v. United States*, 652 F.3d 949, 952 (8th Cir. 2011) ("A failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services outside the wide range of professionally competent assistance sufficient to satisfy the Sixth Amendment."); *Givens v. Cockrell*, 265 F.3d 306, 309-10 (5th Cir.2001) (defense counsel's failure to object to admission of defendant's prior unadjudicated offenses was not deficient performance because the law was unsettled at the time of defendant's sentencing); *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir.1999) ("[T]he rule that an attorney is not liable for an error in

15

judgment on an unsettled proposition of law is universally recognized."). Accordingly, the Court will deny Claim Two as meritless.

## IV.     EVIDENTIARY HEARING

Section 2255 requires a district court to hold a prompt evidentiary hearing unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Fed. R. Civ. P. 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that Movant is not entitled to relief. Therefore, the Court will deny Movant's § 2255 Motion without an evidentiary hearing.

## V.     CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that Movant's Claims lack merit, and is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the Court will not issue a certificate of appealability.

## VI.     CONCLUSION

For all of the foregoing reasons, the Court will dismiss Movant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence without an evidentiary hearing. Additionally, the Court will not issue a certificate of appealability. The Court shall issue an appropriate Order.